420                    April 8, 2026                    No. 291

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ISIDRO PEREZ-MARTINEZ,
*Defendant-Appellant.*

Washington County Circuit Court
21CR47206; A181131

Brandon M. Thompson, Judge.

Argued and submitted January 21, 2025.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Affirmed.

_____
  * Lagesen, Chief Judge *vice* Mooney, Senior Judge.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for one count of sexual abuse in the first degree, ORS 163.427. Before the trial court, defendant's theory of the case was that another man had sexually abused the victim, and defendant sought to introduce evidence that that man had multiple felony convictions in an unrelated case in which he attempted to rape a young girl. The trial court denied defendant's motion to offer the prior bad acts evidence, concluding that it was inadmissible under OEC 404(3) and that it was unduly prejudicial under OEC 403.

In a single assignment of error, defendant argues that the trial court erred by excluding the evidence, advancing two arguments. First, he contends that the trial court's application of OEC 404(3) to exclude evidence of a third party's guilt was both disproportionate to the underlying purposes of the rule and arbitrary, and the trial court therefore violated his constitutional right to present a defense. Second, defendant argues that the trial court's application of the OEC 403 balancing test was legally defective.

We conclude that the trial court did not err. First, the trial court's ruling was neither disproportionate nor arbitrary. The prior bad act evidence raised only a speculative possibility that the third party was the perpetrator, and therefore, its admission risked confusing the jury and distracting it from its central function of deciding defendant's guilt or innocence. Even without the evidence relating to the third party's criminal history, defendant was still able to cross-examine the state's witnesses about the investigation into the third party and about the victim's relationship to him. The trial court's ruling therefore did not significantly impair defendant's ability to present a defense. Moreover, the application of OEC 404(3) was not arbitrary because due process principles do not require that evidentiary rules treat the state and criminal defendants identically in all respects. Second, we conclude that the trial court correctly engaged in the OEC 403 balancing test. We therefore affirm.

## I. BACKGROUND FACTS

The facts relevant to the issues on appeal are undisputed. Defendant, whose nickname is "Chilo," was a long-time friend of R's mother and was involved in R's life from a young age. In 2016 or 2017, when R was approximately eight or nine years old, defendant began giving her massages when no one else was present, which made her uncomfortable. R alleged that one evening in that same time period, defendant entered her bedroom, exposed his penis, and placed her hand on it. The room was "dark" at the time of the incident, but the door to the bedroom was ajar, allowing some light in, and R was able to see defendant's face. Several years later, when R was 13, she disclosed the incident to her mother, who reported it to police. R was then interviewed about the incident by a child forensic interviewer at CARES NW. Defendant was subsequently charged with one count of first-degree sexual abuse.

Defendant's theory of the case was that another man named Flores-Ramos, who shared defendant's first name and also went by the nickname "Chilo," had committed the offense. Flores-Ramos had lived with R's mother for roughly two months sometime between 2014 and 2017.

Defendant filed a pretrial motion seeking to offer evidence of Flores-Ramos's prior bad acts to prove his sexual interest in children. Specifically, in 2017, Flores-Ramos broke into the bedroom of a nine-year-old girl, removed her underwear, touched her vagina, and attempted to rape her before eventually fleeing the scene. After he was apprehended, law enforcement executed a search warrant on his phone and discovered material depicting sexual acts with animals. Flores-Ramos was convicted after a trial of first-degree burglary, first-degree unlawful sexual penetration, first-degree attempted rape, and coercion, and he separately pleaded guilty to five counts of encouraging sexual assault of an animal.

In defendant's written motion, he asserted, among other things, that federal due process principles compelled the trial court to admit the evidence, arguing that the application of OEC 404(3) to exclude evidence of an alternative suspect's prior bad acts would arbitrarily and

disproportionately infringe on his constitutional right to present a defense.[1] The state filed a response objecting to admission of the evidence, arguing that it was inadmissible character evidence under OEC 404(3) and that it was irrelevant, misleading, and confusing.

At the hearing on defendant's motion, defendant reiterated his constitutional argument that excluding the evidence was arbitrary and disproportionate to the purposes of OEC 404(3), which functions primarily to protect the due process rights of criminal defendants. He also argued that, under OEC 404(4), the state could admit the same type of propensity evidence against defendant, and therefore, the trial court should apply the same analysis to defendant's proffered evidence.

The state responded that the evidence was inadmissible because the identity of the perpetrator was not at issue, noting that R's "entire disclosure" consistently identified defendant as the person who touched her, and, as such, the evidence was simply "inadmissible character evidence of somebody who is not on trial."

The trial court denied defendant's motion to admit the prior bad act evidence but ruled that defendant could still pursue his alternative-suspect theory and inquire as to whether the state had investigated Flores-Ramos as a potential suspect. As to defendant's due process argument, the trial court agreed that 404(3) is designed primarily to protect defendants from undue prejudice but concluded that the rule also functions "to keep things out of trials that just shouldn't be there." On that point, the trial court explained that the two incidents were "so dissimilar" that the evidence of Flores-Ramos's crimes was unnecessary to "complete [the] picture" of the defense's theory.

Addressing defendant's OEC 404(4) argument, the court acknowledged that the evidence showed that

---

[1] Defendant also argued that the evidence was admissible under OEC 404(3) for three nonpropensity purposes: (a) to prove the identity of the perpetrator based on the similarities between the charged conduct and the prior bad act; (b) to prove Flores-Ramos's "spurious plan" to sexually abuse children; and (c) to impeach the quality of the state's investigation. The trial court rejected those arguments, and defendant does not challenge that portion of the trial court's ruling on appeal. We therefore do not address any of defendant's non-propensity theories of admissibility.

Flores-Ramos "absolutely has the propensity to touch a child." However, it explained that such evidence would still be subject to a balancing test under OEC 403. In assessing the evidence's probative value, the trial court applied the analysis in *United States v. LeMay*, 260 F3d 1018 (9th Cir 2001), *cert den*, 534 US 1166 (2002), which sets out factors for assessing the probative value of prior bad acts in child-sexual-abuse cases, and concluded that those factors weighed against admission. The trial court ultimately excluded the evidence under OEC 403 on the basis that the evidence was unfairly prejudicial, would "tend to confuse [the] jury," and could result in a "trial within a trial."

After the trial court ruled, defendant clarified that he was not offering Flores-Ramos's animal-related convictions, and, rather, only sought to introduce the convictions that showed his sexual interest in children. The trial court reaffirmed its ruling, "I'm excluding all the criminal-related things to [Flores-Ramos] because, again, I think it's unduly prejudicial, I think it tends to confuse the issues, and all the things I've decided already."

At trial, R identified defendant as the perpetrator and testified that before defendant entered her room, she had heard his voice, and she could see his face after he entered her bedroom. On cross-examination, R stated that she knew Flores-Ramos but testified that he was not living with her family at the time of the incident. R's mother also testified that Flores-Ramos was more than a decade younger than defendant and the men would not "have easily been confused."

Defendant also cross-examined the detective who had investigated R's case. The detective explained that even after he was made aware of another "Chilo" known to the family, he spoke only to R's mother about Flores-Ramos but did not otherwise ask R about Flores-Ramos or seek to have R reinterviewed at CARES. On redirect, the detective clarified that he did not consider Flores-Ramos an "alternative suspect." At that point, defendant asked the trial court to reconsider its earlier ruling, which it declined to do, noting that the evidence at trial "actually makes it worse for [defendant]" because R's testimony made clear that "[R has] known

[defendant] her whole life, and she's not confused about these two individuals." The jury found defendant guilty, and this appeal followed.

## II. ANALYSIS

### A. *Defendant's Constitutional Arguments*

On appeal, defendant first contends that "a trial court may not exclude relevant defense evidence of an alternative suspect's prior bad acts under OEC 404(3)." In defendant's view, that rule's "predominant purpose" is to protect criminal defendants from unfair prejudice, and, accordingly, applying it to exclude defense evidence of an alternative suspect's bad acts is disproportionate to the rule's purposes. Moreover, he asserts that restrictions on a criminal defendant's right to present evidence "must be coupled with reciprocal restrictions on prosecution evidence." Specifically, he contends that OEC 404(4) arbitrarily favors the state—OEC 404(3) prohibits propensity evidence, while OEC 404(4) permits the state to introduce evidence of prior bad acts against a defendant when doing so is not unconstitutional. For that reason, defendant argues that the trial court was required, as a matter of due process, to apply the OEC 404(4) analysis to defendant's evidence offered against Flores-Ramos. For the reasons that follow, we reject defendant's arguments.

We review whether the trial court's evidentiary ruling violated due process for legal error. *See, e.g.*, *State v. Davis*, 345 Or 551, 589, 201 P3d 185 (2008) (so reviewing the defendant's claim that the trial court erred in sustaining the state's objection to hearsay testimony on the basis that that ruling deprived him of an opportunity to present a complete defense).

Under the Due Process Clause of the Fourteenth Amendment,[2] a criminal defendant has the right to a "meaningful opportunity to present a complete defense."

---

[2] Defendant argued below that the exclusion of Flores-Ramos's prior bad acts violated federal due process principles. On appeal, he also argues that the exclusion violates the compulsory process clauses of both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Defendant failed to preserve any argument under the compulsory process clauses. We therefore do not address them in our analysis, although we note that defendant's briefing assumes that the analysis under the compulsory process clauses is identical to the due process analysis.

*Holmes v. South Carolina*, 547 US 319, 324, 126 S Ct 1727, 164 L Ed 2d 503 (2006) (internal quotation marks omitted). That right is "basic in our system of jurisprudence" and includes, "as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *Chambers v. Mississippi*, 410 US 284, 294, 93 S Ct 1038, 35 L Ed 2d 297 (1973) (internal quotation marks omitted). Nevertheless, a defendant's right to present relevant evidence is not unlimited and may "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 US 303, 308, 118 S Ct 1261, 140 L Ed 2d 413 (1998) (internal quotation marks omitted). As a result, defense evidence is subject to established rules of procedure and evidence that are "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 US at 302.

The exclusion of defense evidence does not infringe on a defendant's constitutional right to present a defense so long as the application of the evidentiary rule is neither "arbitrary" nor "disproportionate to the purposes [the rules of evidence] are designed to serve." *Holmes*, 547 US at 324 (internal quotation marks omitted). Moreover, the exclusion of evidence is neither arbitrary nor disproportionate unless it infringes on a "weighty interest of the accused." *Id.* Put simply, unless the exclusion of defense evidence altogether prevents or "significantly undermine[s] fundamental elements of the defendant's defense," the application of evidentiary rules to exclude defense evidence does not "implicate a sufficiently weighty interest of the defendant to raise a constitutional concern." *Scheffer*, 523 US at 309, 315; *see also Chambers*, 410 US at 302 (holding that application of hearsay rule to exclude evidence that an alternative suspect had repeatedly confessed to the crime, including once in a sworn statement, violated due process because the confessions "bore persuasive assurances of trustworthiness" and were "critical" to the defendant's defense).

Here, the trial court ruled that the evidence was inadmissible under OEC 404(3), which provides, in relevant part, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." That rule

prohibits the introduction of "propensity evidence," meaning evidence that seeks to prove that "a person has a propensity to engage in certain types of behavior and that the person acted in conformance with that propensity on a particular occasion." *State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021). Although prohibitions on propensity evidence primarily function to protect a criminal defendant from unfair prejudice, the exclusion of propensity evidence also broadly serves "to protect the fairness of trials and the accuracy of verdicts." *Id.* at 477-78. In particular, the introduction of propensity evidence can "impair the opposing party's ability to present its case," and it may distract the factfinder from its central function of determining the guilt or innocence of the accused, resulting in "confusion of issues and undue consumption of time through what may be, in effect, a trial within a trial to ascertain the relationship between the purported other crime and the defendant." *Id.* at 478-79 (internal quotation marks omitted).

Accordingly, a defendant is not entitled, as a matter of law, to introduce any relevant evidence of an alternative suspect's prior bad acts. *See Holmes*, 547 US at 330 (explaining that evidentiary rules that regulate the admission of evidence of third-party guilt "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues"). Rather, evidence of an alternative suspect's prior bad acts is appropriately excluded under OEC 404(3) if the bad acts bear little similarity or are only tenuously connected to the crimes of which the defendant is accused. *See State v. Stevens*, 328 Or 116, 129-30, 970 P2d 215 (1998). For example, in *Stevens*, the defendant was charged with murdering an eighteen-month-old child, and at trial, his theory of defense was that the child's mother, his girlfriend, had caused the child's death. *Id.* at 118. The defendant sought to introduce evidence of two instances in which neighbors heard or observed the mother abusing her two older children, arguing, among other things, that the evidence was necessary "to provide a complete account of the crime." *Id.* at 127-28. The Supreme Court disagreed, explaining that the instances of abuse and the events leading to the child's murder were too distinct, and that the "only picture that [the evidence] can 'complete'

is that of [the] defendant's version of [the mother's] *character*." *Id.* at 129-30 (emphasis in original).

With those underlying purposes in mind, we conclude that the trial court's ruling focused the jury on the central issue before it by excluding evidence that was highly speculative. Certainly, Flores-Ramos and defendant share a first name and nickname, and both men, in unrelated cases, faced accusations of child sexual abuse. Importantly though, throughout R's testimony and disclosures, she never expressed confusion as to the identity of her abuser. Indeed, both men were well-known to R, and on the night of the incident, R heard the perpetrator's voice before he entered the room, and she was able to see his face. That Flores-Ramos, in an unrelated case, attempted to rape a young girl, does not establish a non-speculative possibility that he also abused R. As the trial court explained in its ruling, that evidence risked confusion of the issues before the jury and its exclusion sought to avoid unnecessary litigation of collateral issues. Therefore, the application of OEC 404(3) to exclude Flores-Ramos's prior bad acts was not "disproportionate" to the purposes of the rule.

Moreover, the trial court's ruling to exclude the evidence of Flores-Ramos's prior bad acts did not prevent nor significantly impede defendant's ability to present a defense. To the contrary, defendant was permitted to pursue his theory that Flores-Ramos was the perpetrator: he cross-examined both R and her mother regarding their relationship with Flores-Ramos, and he questioned the detective as to whether he had investigated the possibility that Flores-Ramos had committed the offense. In closing, defendant argued that it was possible that R had mistaken Flores-Ramos for defendant because the bedroom was dark and emphasized that the state had failed to investigate an individual who shares defendant's name and who had the opportunity to commit the crime. On that record, we cannot say that the exclusion of Flores-Ramos's prior bad acts significantly undermined fundamental aspects of the defense theory.

We turn then to defendant's argument that the trial court's ruling was arbitrary. Specifically, he asserts that

restrictions on a criminal defendant's right to present evidence "must be coupled with reciprocal restrictions on prosecution evidence." In defendant's view, because OEC 404(3) bars admission of evidence of an alternative suspect's prior bad acts for propensity purposes but OEC 404(4) does not impose a reciprocal bar on prosecution evidence against a defendant, the application of OEC 404(3) is unconstitutionally arbitrary.

OEC 404(4) provides:

"(4)  In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)  [OEC 406 to OEC 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

Defendant argues that that rule arbitrarily favors the state. In support of that argument, defendant relies on *Wardius v. Oregon*, 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973), in which the United States Supreme Court held that due process prohibited enforcement of an alibi rule that required the defendant to inform the state before trial of his intention to call an alibi witness, but which did not grant the defendant a right of reciprocal discovery. *Id.* at 475-76. In reaching that conclusion, the court explained that "discovery must be a two-way street," and that it was "particularly suspicious of state trial rules which provide nonreciprocal benefits to the [s]tate when the lack of reciprocity interferes with the defendant's ability to secure a fair trial." *Id.* at 474 n 6, 475. Accordingly, it was "fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the [s]tate." *Id.* at 476.

*Wardius* narrowly involved a discovery rule that impaired the defendant's ability to present their defense, and it does not stand for the broad proposition that all rules of evidence or procedure must treat the state and a criminal defendant identically in all respects. As the Oregon Supreme Court has explained,

> "*Wardius* \*\*\* does not require that every procedure relating to both a defendant and the state ensure identical rights in order to satisfy due process. Rather, *Wardius* addressed only a narrow procedural requirement that is not at issue here. In *Wardius*, the Court held that a statute may not require a defendant—who has no burden of proof at trial—to disclose certain alibi witnesses, when the state had no comparable obligation to disclose its witnesses. The holding in *Wardius*, however, did not establish a constitutional rule that a defendant and the state must be treated identically in all respects."

*State v. Upton*, 339 Or 673, 686-87, 125 P3d 713 (2005) (citation omitted) (holding that state law creating a procedure under which a jury determines aggravating or enhancing factors, but did not do the same for mitigating factors, did not violate *Wardius* or due process principles); *see also State v. Bray*, 363 Or 226, 239 n 10, 422 P3d 250 (2018) (explaining that *Wardius* is a "narrow decision"). Indeed, the Supreme Court has previously rejected a *Wardius* challenge to OEC 404(4). *State v. Moore/Coen*, 349 Or 371, 387, 245 P3d 101 (2010). In *Moore/Coen*, the court explained that although OEC 404(4) does not expressly provide a reciprocal benefit to a criminal defendant, "a defendant may nevertheless introduce evidence of other crimes or wrongful acts—for example, by a victim, codefendant, or other suspect—under OEC 404(3)[.]" 349 Or at 390. Thus, "OEC 404(4) does not prevent a defendant from presenting a complete defense, as did the statute under consideration in *Wardius*." *Moore/Coen*, 349 Or at 390-91.

Defendant asserts, without much explanation, that *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), invalidated the reasoning in *Moore/Coen*. However, we do not read *Williams* to have reopened the question of whether OEC 404(4) violates due process. In *Williams*, the Supreme Court concluded that OEC 404(4) supersedes OEC 404(3) in

criminal cases, except as otherwise provided by the state or federal constitutions. 357 Or at 24. Defendant's argument appears to be that because *Williams* established that character evidence against a defendant may be admissible under OEC 404(4) for *propensity* purposes, but character evidence against any other party is admissible under OEC 404(3) only for *non-propensity* purposes, the rule is arbitrary.

We disagree. OEC 404(4) is not an unqualified rule of admissibility. Rather, there are two "primary constraints" on the admissibility of other-acts evidence under OEC 404(4): the evidence must be logically relevant under OEC 401, and the trial court must conduct OEC 403 balancing and exclude the evidence if "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *State v. Martinez*, 335 Or App 643, 650, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025). In conducting that balancing, "the degree of character-based reasoning that is present" is "central" to performing the OEC 403 balancing. *State v. Davis*, 372 Or 618, 629-30, 553 P3d 1017 (2024). That is, even though OEC 404(4) does not expressly prohibit evidence of a defendant's character, "a court is still advised to determine whether other acts evidence that is being offered under OEC 404(4) is either explicitly, or by inference, evidence of character and whether propensity reasoning is at play." *Id.* at 635. Evidence that relies on propensity reasoning generally has "little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial." *Id.* at 635-36 (internal quotation marks omitted). In light of those constraints on the admissibility of evidence under OEC 404(4), and considering the narrow procedural context in which *Wardius* was decided, we decline to expand *Wardius*'s holding as defendant argues.

In conclusion, the trial court did not err in applying OEC 404(3) to exclude evidence of Flores-Ramos's prior bad acts because the application of that rule was neither disproportionate nor arbitrary. The bad acts evidence was only tenuously connected to the central factual issue at trial—defendant's innocence or guilt—and thus risked confusing the issues before the jury. Defendant was nevertheless

permitted to pursue his theory of the case through cross-examination of R, her mother, and the investigating detective, and he argued the possibility of mistaken identity to the jury. Thus, the court's ruling to exclude Flores-Ramos's convictions did not prevent or significantly impair defendant's ability to present a defense. We further reject defendant's argument that the application of OEC 404(3) was arbitrary—due process principles do not mandate that evidentiary rules treat the state and defendant similarly in all respects.

B.  *OEC 403 Balancing*

We turn then to defendant's argument that the trial court committed legal error in conducting the balancing test under OEC 403. At the outset, we note that we review the trial court's ultimate determination as to whether evidence is admissible under OEC 403 for abuse of discretion. *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005). However, defendant does not argue that the trial court's determination that the evidence of Flores-Ramos's prior bad acts was unduly prejudicial was outside the trial court's "permissible range of discretion." *Davis*, 372 Or at 621. Instead, he argues that the trial court's OEC 403 balancing test was legally defective, which presents a question of law. *Shaw*, 338 Or at 614-15.

Specifically, defendant contends that the trial court's application of the balancing test was legally defective for three reasons: (1) the trial court considered the probative value of the other acts only as evidence of a *modus operandi* but failed to consider its tendency to prove that Flores-Ramos was sexually interested in children; (2) the trial court improperly evaluated the bad acts evidence using the factors identified in *LeMay*; and (3) the trial court failed to consider whether the evidence could be simplified. As we will explain, we conclude that the trial court did not commit legal error in conducting the OEC 403 balancing.

OEC 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" In assessing that question,

a trial court engages in a four-step process. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987). First, the trial court assesses the probative value of the evidence and the proponent's need for the uncharged misconduct evidence. *Id.* Second, the trial court considers how prejudicial the evidence is; that is, the extent to which the evidence may distract the jury "from the central question whether the defendant committed the charged crime." *Id.* Third, the trial court then must balance the proponent's need for the evidence against the countervailing prejudicial danger. *Id.* Finally, the trial court must make a ruling as to whether to admit or exclude the evidence, or whether to admit some portion of the evidence. *Id.* While *Mayfield* provides "valuable guidance" as to the meaning and application of OEC 403, it "does not set out a checklist that trial courts must mechanically tick off on the record or risk reversal." *State v. Anderson*, 363 Or 392, 404, 423 P3d 43 (2018). Rather, a trial court makes a sufficient record under *Mayfield* "if the trial court's ruling, considered in light of the parties' arguments, demonstrates that the court balanced the appropriate considerations." *Id.* at 406.

Defendant's first challenge to the trial court's ruling is that the trial court considered the probative value of the other acts only as evidence under a non-propensity theory of a *modus operandi* but failed to consider its tendency to prove that Flores-Ramos was sexually interested in children. We reject that argument as inconsistent with the record. Defendant argued in his motion and at the contested hearing that prior bad act evidence is admissible for propensity purposes when used to show that a defendant has a sexual interest in children and that such evidence was therefore also admissible against an alternative suspect. During the contested hearing, the trial court specifically asked the state to address defendant's argument that the evidence should be admitted to show that Flores-Ramos "[i]s attracted to children," to which the state responded that the evidence was "just distracting [to] everybody" and that it was inadmissible propensity evidence offered against "somebody who is not on trial." Moreover, in its ruling, the trial court expressly stated that Flores-Ramos "absolutely has the propensity to touch a child," and the court considered the evidence under the *LeMay* factors, explaining "that's the

403 balancing, is it going to tend to confuse a jury? And the answer is absolutely it would." On that record, we conclude that the trial court expressly considered defendant's propensity theory of admissibility and rejected it after conducting OEC 403 balancing.

Defendant next argues that the trial court "erroneously assumed that the *LeMay* factors were applicable to defense evidence of an alternative suspect's prior bad acts." In *LeMay*, the Ninth Circuit outlined the following nonexclusive factors for trial courts to consider in determining whether to admit evidence of a defendant's prior acts of sexual misconduct: (a) the similarity of the prior acts to the acts charged, (b) the closeness in time of the prior acts to the acts charged, (c) the frequency of those prior acts, (d) the presence or lack of intervening circumstances, and (e) the necessity of the evidence beyond the testimonies already offered at trial. 260 F3d at 1027-28. In defendant's view, those factors were "calibrated to measure the probative value of *prosecution* evidence of the *defendant's* prior acts" and thus "were not designed to measure the probative value of defense evidence of an alternative suspect's prior bad acts." But defendant does not identify any legal authority that prevents a trial court from applying the *LeMay* factors to evaluate evidence offered by a defendant, and we are reticent to conclude, without a more developed argument, that a trial court is prohibited from utilizing a well-accepted legal framework to aid in its assessment of sexual misconduct evidence. *See Williams*, 357 Or at 20 (citing *LeMay* with approval for proposition that the nonexclusive factors identified in *LeMay* may assist trial courts in weighing the risk of prejudice presented by "other acts" evidence). We thus reject defendant's argument as undeveloped. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P2d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

Finally, defendant contends that the trial court neglected the final step of the *Mayfield* analysis by ignoring

the possibility that the evidence could be simplified. However, as explained above, a trial court is not required to mechanically apply each *Mayfield* step. Instead, we review the trial court's ruling in the full context of the record, including the parties' arguments, to determine whether it engaged in the appropriate balancing. Here, after the trial court ruled to exclude the evidence, defendant clarified that he could offer a limited version of the evidence "so we [c]ould avoid that sort of trial within a trial aspect." The trial court reaffirmed its ruling in response. In that context, we conclude that the trial court balanced the appropriate considerations. We therefore do not discern any reversible legal error in the trial court's OEC 403 balancing.

Affirmed.