Argued and submitted February 22, judgment of conviction for prostitution reversed; amended judgment of probation violation reversed and remanded May 8, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LORI SUE PALOMO,
*Defendant-Appellant.*

Marion County Circuit Court
10C47563, 10C46584;
A148047 (Control), A148045

301 P3d 439

Erik M. Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rolf Moan, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant was serving probation as a result of a prior conviction when she was convicted of prostitution, ORS 167.007. She appeals the judgment of conviction for prostitution and an amended judgment of probation violation in the prior case based on the prostitution conviction. She challenges her prostitution conviction, contending, among other things, that the trial court erred in denying her motion for judgment of acquittal (MJOA).[1] Defendant further contends that, because the trial court erred in convicting her of prostitution, it erred in concluding that she had violated the probation that she was serving on the prior conviction. Because we conclude that the record does not contain legally sufficient evidence to convict defendant of prostitution, we reverse defendant's conviction for prostitution and remand to the trial court to reconsider whether defendant violated her probation.

We state the facts consistently with the trial court's findings, which are supported by the record. *State v. Davis*, 254 Or App 387, 388, 292 P3d 666 (2012). Police Officer Gamble received a report that a woman in the alley behind a homeless shelter for men was flashing her breasts and asking people for a cigarette.[2] Gamble went down the alley toward the shelter and saw defendant and a man, Bingham, standing outside of the shelter. He overheard part of their conversation, which caused him to suspect that defendant was engaging in prostitution.

Gamble waited for 30 seconds and then continued on to the location where defendant and Bingham had been talking. He observed defendant performing oral sex on Bingham and confronted them. Gamble asked defendant if she was engaging in sexual conduct in exchange for a fee,

---

[1] After the state rested at trial, defendant moved for a judgment of acquittal, which the court denied. In her closing argument, defendant argued that there was legally insufficient evidence to convict her of prostitution, which is the equivalent of an MJOA. *See State v. Trivitt*, 247 Or App 199, 201 n 1, 268 P3d 765 (2011). Thus, defendant renewed her MJOA in her closing argument.

[2] Defendant objected to Gamble's testimony relating to the content of the report as hearsay. The court allowed Gamble to testify to the content of the report for the purpose of explaining why he took the actions that he took but stated that it would not consider his testimony regarding the report for its truth.

and she denied that she was doing that. She told Gamble that she and Bingham were friends.

Based on that incident, defendant was charged with prostitution, ORS 167.007(1)(a), and tried by the court.[3] ORS 167.007(1)(a) provides that a person commits prostitution when the "person engages in, or offers or agrees to engage in, sexual conduct or sexual contact in return for a fee." The word "fee" is not defined in the statutory scheme.

At trial, Gamble testified about the conversation that he had overheard between defendant and Bingham. He testified that Bingham had said, "[g]ive you that just for showing me your tits," to which defendant had responded, "No. I'll give you a," after which Gamble was unable to hear what defendant said for a moment, although he heard her finish her sentence with the word "job." Gamble testified that he did not know what Bingham had offered to give defendant in exchange for her showing her breasts. He further testified that, when he had confronted defendant, she had appeared to be very intoxicated.

After the state rested, defendant moved for a judgment of acquittal, contending that there was insufficient evidence that defendant had agreed to exchange sexual conduct for a fee and insufficient evidence to establish what the fee was. The state responded that, based on the circumstantial evidence, the court could infer that there was an agreement to exchange sexual conduct for cigarettes. The court reminded the state that it had not admitted the comment about cigarettes for its truth and, therefore, would not consider that evidence to establish what defendant had agreed to exchange for sexual conduct. The court nonetheless denied defendant's motion.

Defendant testified that she was homeless at the time of her arrest. She further testified that she occasionally smoked and that, on the night in question, she had probably asked Bingham for a cigarette, although she clarified that she did not agree to perform a sex act in exchange for a cigarette. When asked why she had performed oral sex on

---

[3] Although defendant was originally cited for prostitution and indecent exposure, the state did not to charge her with indecent exposure.

Bingham, defendant responded that it was probably because she had been drunk and he had taken advantage of the situation.

In his closing argument, the prosecutor contended that the evidence established that defendant had agreed to engage in sexual conduct for a fee, namely, a cigarette. Defense counsel responded that the state had not proved that defendant and Bingham had agreed to exchange anything of value.

The court inquired into whether the state was required to prove specifically what the fee had been that the parties had agreed to exchange. The prosecutor responded that the state did not need to prove specifically what the fee had been but that, regardless, the circumstantial evidence proved that the fee was a cigarette. The court reiterated that it had allowed Gamble to testify to the report that a woman was flashing her breasts and asking for cigarettes to explain why Gamble had entered the alley, but that it would not consider that testimony for its truth. The court further stated that it was not going to entertain an argument that the fee was a cigarette because there was no admissible evidence to support such a finding.

The prosecutor went on to contend that anything that is of value to the person performing the sexual conduct constitutes a fee, including a kiss or a breath of fresh air. In response, defense counsel reiterated that the state had not submitted evidence that proved what defendant and Bingham had agreed to exchange and that, consequently, the court could not conclude that it was a fee.

The court concluded that it did not need to find what defendant and Bingham had agreed to exchange in order to convict defendant of prostitution. The court explained that all that it needed to find in order to convict defendant of prostitution was that defendant and Bingham had agreed to exchange something for sexual conduct, which the court found to have occured. Based on that finding, the court entered a judgment convicting defendant of prostitution. The court further concluded that defendant had violated her probation in the earlier case by engaging in prostitution and entered an amended judgment continuing her probation for 18 months.

Defendant appeals both judgments, contending, among other things, that the court erred in denying her MJOA. Specifically, defendant contends that a rational trier of fact could not find from the evidence presented that defendant had agreed to exchange sexual conduct for a fee. Defendant's argument is based on her interpretation of the word "fee," as used in ORS 167.007(1)(a), which she contends is something that has economic value and involves a commercial transaction. Thus, defendant argues, to convict a person of prostitution, the state must present evidence from which a rational trier of fact could find that the thing for which the defendant agreed to exchange sexual conduct or sexual contact has an economic value and involves a commercial transaction.

The state agrees with defendant that something qualifies as a fee for purposes of ORS 167.007(1)(a) only if it has an economic value and involves a commercial transaction. Nonetheless, the state responds that we must affirm because the evidence permitted a rational trier of fact to infer that defendant had agreed to engage in sexual conduct for a cigarette.

We review the denial of an MJOA to determine "whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). That inquiry depends on the elements of the offense in question and, here, specifically depends on the meaning of the word "fee" as used in ORS 167.007(1)(a). "When particular terms are not statutorily defined, we give them their plain, natural, and ordinary meaning unless the context indicates that the legislature intended some other meaning." *State v. Spainhower*, 251 Or App 25, 28, 283 P3d 361 (2012). Because the word "fee" is not defined in the statutory scheme, we look first to its plain and ordinary meaning.

"In ascertaining the meaning of words of common usage, a dictionary provides guidance." *Ogle v. Nooth*, 254 Or App 665, 670, 298 P3d 32 (2013). Fee is defined as "compensation often in the form of a fixed charge for a professional service or for special and requested exercise of

talent or of skill." *Webster's Third New Int'l Dictionary* 833 (unabridged ed 2002). The legal definition of fee is a "charge for labor or services, esp. professional services." *Black's Law Dictionary* 647 (8th ed 2004). Those definitions support the agreement by defendant and the state that a fee, as a charge or compensation for services, has economic value and involves a commercial transaction.

The legislative history of ORS 167.007 further supports the conclusion that the legislature intended the word "fee" to constitute a charge that has an economic value in a transaction that is commercial in character. The commentary to the Criminal Code explains that the phrase, "for a fee," was included in the statute to express the "commercial character" of the conduct that the statute prohibits. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 250, 239 (July 1970). The commentary further explains that the word "fee" was used to encompass "other forms of valuable consideration that may bind the transaction" in addition to money. *Id.*

Thus, the ordinary meaning of "fee" and the legislative history of ORS 167.007 support the conclusion that a fee is something that has economic value in a transaction that is commercial in character.[4] There is no doubt that certain things, such as money and drugs, constitute a fee, the agreement to exchange sexual conduct for which constitutes prostitution. However, we disagree that, as the state argued at trial, anything that is of value to the recipient, including a kiss, likewise constitutes a fee.

Given that understanding, we conclude that a person cannot be convicted of prostitution unless the trier of fact is able to find that the thing to be exchanged has those characteristics. Otherwise, the agreement could be to exchange

---

[4] The committee that drafted the legislation expressly stated that it did not intend to criminalize the conduct of a paramour, who, the committee members recognized, could be viewed as exchanging sexual conduct for valuable consideration in the form of, among other things, room and board. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 2, Oct 9, 1969, Tape 83, Sides 1, 2 (statements of Roger Wallingford and Lee Johnson). The committee members believed that an agreement for a reciprocal exchange of sexual conduct or contact would not constitute prostitution.

something that does not have those characteristics and that would not violate the statute.

Here, there was no evidence in the record from which the trier of fact could find that the thing for which defendant had agreed to exchange sexual conduct had economic value. The trial court did not admit the evidence relating to cigarettes for its truth and told the state that it would not entertain an argument that the fee was a cigarette because there was no admissible evidence to support such a finding. Without that evidence, there is nothing in the record that establishes what defendant agreed to exchange sexual conduct for and whether that thing had economic value. We conclude that the trial court erred in denying defendant's MJOA because a rational trier of fact could not find from the evidence presented that defendant had agreed to exchange sexual conduct in return for a fee.

As noted, defendant's prostitution conviction was also the basis for the trial court's conclusion that defendant had violated her probation. Therefore, we also reverse and remand the amended judgment of probation violation for reconsideration in light of the reversal of defendant's prostitution conviction. *See State v. Brown*, 53 Or App 666, 669, 633 P2d 20 (1981) (holding that, because it appeared that the defendant's robbery conviction was the primary, if not sole, basis for revoking his probation and that conviction was vacated, the case had to be remanded to the trial court to reconsider its revocation decision, and if the trial court were to find that the purposes of probation were not being served, it could exercise its discretion accordingly).

Judgment of conviction for prostitution reversed; amended judgment of probation violation reversed and remanded.