22 August 27, 2025 No. 757

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALAN JAMES SWINNEY,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR50067; A178162

Heidi H. Moawad, Judge.

Argued and submitted June 12, 2024.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment convicting him of multiple offenses for his conduct at two protests in downtown Portland, raising five assignments of error.[1] In his first assignment, defendant contends that the trial court erred when it instructed the jury on the common-law doctrine of transferred intent—specifically, that the jury could convict him of second-degree assault (Count 5) on the theory that defendant intended to injure a particular unnamed person with a paintball gun and actually injured the named victim, JB. In his second assignment, defendant contends that the trial court erred in entering a judgment convicting him of Count 5 on that theory. In his third through fifth assignments, defendant contends that the trial court erred when it overruled his objection to the state's rebuttal closing argument, ordered him to pay per diem fees for the first time in the judgment, and imposed an indefinite term of post-prison supervision (PPS) on Count 8.

We conclude that the second-degree assault statute, ORS 163.175, does not require that a defendant intend to assault and actually injure the same person, as defendant contends. We therefore reject defendant's first and second assignments of error. We further conclude that defendant failed to preserve the argument he advances on appeal with regard to the trial court overruling his objection to the state's rebuttal closing argument and that we cannot review his claim of error as plain error. Finally, we accept the state's concessions that the trial court plainly erred in ordering per diem fees and erred in imposing an indefinite PPS term on Count 8. We therefore remand for resentencing and otherwise affirm.

## BACKGROUND

We briefly state the relevant historical and procedural facts, which are undisputed on appeal, and include additional facts in our analysis of each assignment of error. In the summer of 2020, various right-wing groups organized

---

[1] A jury convicted defendant of attempted fourth-degree assault, ORS 161.405 and ORS 163.160 (Count 1); second-degree unlawful use of an electrical stun gun, tear gas or mace, ORS 163.212 (Counts 2 and 11); attempted second-degree assault, ORS 161.405 and ORS 163.175 (Count 3); unlawful use of a weapon, ORS 166.220 (Counts 4, 7, and 8); second-degree assault, ORS 163.175 (Count 5); menacing, ORS 163.190 (Count 9); pointing a firearm at another, ORS 166.190 (Count 10); and fourth-degree assault, ORS 163.160 (Count 12).

"flag wave" events in support of the police and in opposition to ongoing racial justice protests following the murder of George Floyd in May of that year. Defendant travelled from Texas to participate in two such events held at the Justice Center in downtown Portland, both of which drew left-wing counter-protesters. At both events, defendant sprayed people in the face with bear mace and shot people with a paintball gun. At the second event, defendant also pointed a loaded gun at individuals in the crowd.

Defendant's first three assignments of error pertain to the circumstances giving rise to Count 5. As to that second-degree assault charge, the state alleged that at the first event "on or about August 15, 2020, * * * [defendant] did unlawfully and intentionally and knowingly cause physical injury to [JB], by means of a dangerous weapon, to wit: [a] paintball gun[.]" At trial, JB testified that defendant shot him in the eye with a paintball gun, causing long-term degradation of JB's eyesight. JB acknowledged that defendant might have been aiming at the person to his left. The state also presented evidence that defendant posted a video on social media that showed defendant, who is White, shooting JB, who is also White, in the eye with a paintball gun and admitting to doing so. The video also showed an unidentified young Black man wearing a white shirt and a gas mask, who was standing directly to JB's left when he was hit with a paintball.

Defendant raised self-defense and defense of others to justify his use of physical force. As to Count 5, defendant testified that he fired his paintball gun at the unidentified young Black man, and one paintball struck JB inadvertently.

At the state's request and over defendant's objection, the trial court instructed the jury that it could convict defendant of second-degree assault on Count 5 on the theory that he intended to injure an unidentified person but in fact injured JB, as follows:

> "In the context of [Count 5], you will be asked to consider whether the concept of transferred intent applies. Transferred intent applies when a person unlawfully and intentionally attempts to injure another, but the shot or blow takes effect upon and causes injury to someone else instead.

"In that situation, the person's intent to injure the intended victim is transferred to the victim who was actually injured. In other words, the identity of the victim is immaterial if the intent to injure is established, and an injury to a person results[.]

"*** In order to reach a lawful verdict as to this count, you must unanimously agree on whether or not the state has proved this count under the concept of transferred intent, or that the defendant intentionally or knowingly injured [JB]."

The verdict form accordingly presented the jury with two theories for Count 5. The jury found defendant not guilty of having "intentionally or knowingly caused physical injury to [JB] by means of a dangerous weapon, to-wit: a paintball gun," but it found defendant guilty of having "intended to cause physical injury to an unidentified person by means of a dangerous weapon, to-wit: a paintball gun, and [JB] was injured." The court accepted the verdict and entered a judgment that convicted defendant of Count 5.

## TRANSFERRED INTENT

In his first assignment of error, defendant challenges the trial court's instruction to the jury on transferred intent as to Count 5. In defendant's view, the second-degree assault statute, ORS 163.175, requires that a defendant intend to engage in assaultive conduct toward the same person that is injured as a result of that conduct. He argues that the common-law doctrine of transferred intent does not apply to second-degree assault because it is not expressed in any Oregon statute, including the text of the assault statutes, and has only been applied to murder, the rationale for which is not present in the assault context. In the state's view, ORS 163.175 requires only that the defendant intend to cause physical injury to another, not a particular person. The state argues that the plain text of ORS 163.175 incorporates the doctrine of transferred intent, which the Commentary to the 1971 Criminal Code expressly confirms.

We conclude that the elements of second-degree assault, as codified in the text of ORS 163.175, encompass intentional assaultive conduct toward one person that actually (seriously) injures another. Thus, contrary to defendant's

contention, ORS 163.175 does not require that a defendant intend to engage in assaultive conduct toward and actually (seriously) injure the *same* person to commit second-degree assault. We emphasize, however, that the concept of transferred intent under Oregon law and ORS 163.175 does not incorporate the legal fiction that the defendant's intent to injure one person somehow transfers to another person.

To put the parties' arguments in context, we begin with a brief overview of transferred intent. Generally, the doctrine applies when the charged crime requires that the defendant "intentionally cause a forbidden result" but "there is a difference between the result he intends and the result he achieves." Wayne R. LaFave, 1 *Substantive Criminal Law* § 5.2(c) (3d ed 2024).[2] The doctrine arose in the early 17th Century common law in response to basic "bad-aim" cases in which the defendant intended to harm one person but actually harmed another. Peter K. Westen, *The Significance of Transferred Intent*, 7 Criminal Law & Philosophy 321, 324 (2013).

Blackstone formulated the doctrine of transferred intent as follows: "[I]f one shoots at A and misses him, but kills B, this is murder; because of the previous felonious intent, which the law transfers from one to the other." William Blackstone, 4 *Commentaries on the Laws of England* 201 (1769). Modern commentators recognize that the concept of transferred intent is a "legal fiction," because "the defendant's mental state with regard to the innocent victim is not one of intent" at all. LaFave, 1 *Substantive Criminal Law* § 5.2(c)(1); *see also* Westen, 7 *Criminal Law & Philosophy* at 322 ("Commentators uniformly disparage it as a legal fiction[.]"). Indeed, LaFave observes that transferred intent is better understood as an answer to certain "out-of-the ordinary cases" that raise a legal or proximate causation problem: "[I]s there in the eyes of the law a sufficient causal connection between the defendant's conduct and the result of his conduct?" LaFave, 1 *Substantive Criminal Law* § 6.4(a). Thus, at least in classic "bad-aim" cases, colloquially

---

[2] LaFave categorizes transferred intent cases into four types of disparity between the intended and actual result: unintended victim, unintended manner of harm, unintended type of harm, and unintended degree of harm. 1 *Substantive Criminal Law* § 5.2(c)(1)-(4).

describing transferred intent as "the intention follows the bullet" is imprecise and potentially confusing.

Oregon's early case law tracked Blackstone's formulation of transferred intent but not his fictitious rationale. In *State v. Johnson*, 7 Or 210, 212 (1879), the Oregon Supreme Court described the common-law doctrine of transferred intent as "an elementary principal of criminal law" whereby "if one person intending to kill another shoots at him, and missing his aim kills a third, he is as guilty as if he had killed the one at whom the shot was fired." Before the adoption of the Criminal Code in 1971, the common-law doctrine of transferred intent "historically ha[d] been an integral part of Oregon law." *State v. Wesley*, 254 Or App 697, 703-04, 295 P3d 1147, *rev den*, 354 Or 62 (2013) (collecting cases).

In *Wesley*, we recognized that whether transferred intent continues to apply to a criminal offense after the adoption of the 1971 Criminal Code is a question of statutory construction to discern the legislature's intent. 254 Or App at 707. We concluded in that case that "the Oregon Criminal Code embodies the transferred intent doctrine for murder[.]" *Id.* We reasoned that because "neither the text of any statute in the Criminal Code, nor the commentary to the 1971 Criminal Code, suggests that the legislature intended to abolish the 'elementary principle of criminal law' embodied in the doctrine of transferred intent," we would not assume that it had done so, given that the legislature had codified the "very closely related doctrine" of felony murder that imposes criminal liability for committing criminal homicide "in the course of and in furtherance of" certain Class A or B felonies but without the intent to kill. *Id.* at 707-09 (quoting *Johnson*, 7 Or at 211). Thus, construing the statute otherwise "would run afoul of" proportionality jurisprudence under Article I, section 16, of the Oregon Constitution and the maxim that courts should construe a statute in a way that avoids "an anomalous, and constitutionally problematic, result." *Id.* at 708-09. *Wesley* correctly framed the transferred intent issue as whether the legislature intended the criminal statute to forbid a defendant's intentional conduct that harms a different victim than the defendant intended. Since *Wesley*, we have held that the

doctrine of transferred intent does not apply to the offense of aggravated harassment, *State v. Vanorden*, 324 Or App 489, 526 P3d 824 (2023), or to the defense of deadly force in defense of a person, *State v. Gilmore*, 336 Or App 706, 562 P3d 250 (2024), *rev den*, 373 Or 738 (2025). Our holdings in both cases relied primarily on the text of the respective statutes that identifies the specific recipient of the defendant's conduct. *See Vanorden*, 324 Or App at 493-94 ("For the offense of aggravated harassment, ORS 166.070(1)(c) requires that the person intentionally propel saliva at *the* police officer with whom the saliva makes physical contact." (Emphasis in original.)); *Gilmore*, 336 Or App at 714-15 ("[J]ustification for the use of deadly force under ORS 161.219 is specific to the particular 'other person' that is engaged in the conduct described by ORS 161.219(1) to (3).").

Thus, whether the jury may convict a defendant of second-degree assault on a transferred intent theory turns on whether the legislature intended ORS 163.175 to forbid a defendant's intentional assaultive conduct that results in (serious) physical injury to a different victim than the defendant intended. That is ultimately a legal question of statutory construction requiring us to examine the statute's text, context, and legislative history, *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), as well as prior judicial constructions of the statute, *Ingle v. Mateucci*, 371 Or 413, 423, 537 P3d 895 (2023).

We begin with the text of ORS 163.175 and prior judicial constructions of that statute. As relevant here, "[a] person commits the crime of assault in the second degree if the person *** [i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]" ORS 163.175(1)(b). The Supreme Court recently clarified that the phrase "intentionally or knowingly causes (serious) physical injury to another" in ORS 163.175 contains two elements: (1) intentionally or knowingly engaging in assaultive conduct—that is, an act involving physical contact with another person—that (2) intentionally, recklessly, or negligently results in (serious) physical injury to another. *State v. Owen*, 369 Or 288, 302, 322, 505 P3d 953 (2022). *Owen* does not foreclose the possibility that the

second-degree assault statute encompasses a defendant's intentional conduct that harms a different victim than the defendant intended.

Turning to whether the text of ORS 163.175 identifies the specific recipient of the defendant's assaultive conduct, we conclude that it does not. As noted, ORS 163.175 requires that a person cause (serious) physical injury "to another." Used as a pronoun, "another" means "one other than oneself" or "one of a set or group of unspecified or indefinite things." *Webster's Third New Int'l Dictionary* 89 (unabridged ed 2002). As in other criminal statutes, the legislature's use of "another" indicates that the specific identity of the victim is not a material element of the offense. *See State v. Turnidge (S059155)*, 359 Or 364, 461-62, 374 P3d 853 (2016) (rejecting the defendant's argument that murder requires an intent to cause the death of a specifically identified person because the plain text—"causes the death of another human being"— does "not suggest that a defendant's actions must target a particular, identifiable person"); *cf. State v. Hull*, 286 Or 511, 519, 595 P2d 1240 (1979) (in prosecution for theft of an animal "[i]t is immaterial whose property the animal was, as long as it was the property of someone other than [the] defendants" (citing ORS 164.015 and ORS 135.725)).

Further, just as there is no indication in the text of ORS 163.175 that the defendant must intend to engage in assaultive conduct that results in (serious) physical injury to a specifically identified person, there is also no indication in the text that a defendant must intend to engage in assaultive conduct towards the same person who suffers the resultant (serious) physical injury. As *Owen* made clear, "causes (serious) physical injury" encompasses two distinct elements—a conduct and a result—with two distinct mental states that are not necessarily identical. 369 Or at 302, 322.

Turning to context, we agree with the state that had the legislature intended to limit the scope of ORS 163.175 only to cases where the defendant intends to engage in assaultive conduct toward a particular person that results in (serious) physical injury to the same person, it readily could have done so. For example, the legislature's use of a definite article together with an identified category of victim in the

aggravated harassment statute evidences its intent to limit the statute's scope and preclude the application of the transferred intent doctrine. *Vanorden*, 324 Or App 493-94; ORS 166.070(1)(c) ("A person commits the crime of aggravated harassment if the person, knowing that the other person is a [p]ublic safety officer, intentionally propels saliva *at the public safety officer*, and the saliva comes into physical contact *with the public safety officer* \* \* \*." (Emphases added.)).

Finally, the legislative commentary to ORS 163.175 expresses the drafters' intent to preserve the common-law doctrine of transferred intent in the context of intentional assault: "In intentional assault, though the intent factor is stated in terms of purpose to injure 'another,' the act prohibited is physical injury to *any* person. This is intended to preserve the common law concept of transferred intent." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 92-94, 94 (July 1970) (emphasis in original). Indeed, LaFave explains that "the transferred intent doctrine is sometimes built into the statutory definition, such as by expressing the mental state in terms of 'that individual or another.'" 1 *Substantive Criminal Law* § 5.2(c)(4) at n 40.

We therefore conclude that ORS 163.175 does not require that a defendant intend to engage in assaultive conduct toward and actually injure the same person to commit second-degree assault. However, we emphasize that we do not reach that result based on the legal fiction that the defendant's intent to injure one person somehow transfers to another person. Rather, the elements of second-degree assault as codified in the text of ORS 163.175 encompass intentional assaultive conduct toward one person that actually (seriously) injures another. Of course, the resultant (serious) physical injury is a material element that must be accompanied by a culpable mental state under ORS 161.085. *Owen*, 369 Or at 322.

Returning to the facts of this case, defendant contends that the trial court erred by instructing the jury on transferred intent as to Count 5 and entering a judgment convicting him on that theory. As we understand defendant's argument, his sole contention is that transferred

intent is not a viable legal theory of second-degree assault. Given our conclusion that the second-degree assault statute encompasses cases where the defendant intends to engage in assaultive conduct towards one person but that conduct results in (serious) physical injury to a different person, we reject defendant's first two assignments of error.[3]

## CLOSING ARGUMENT

In his third assignment of error, defendant contends that the trial court erred by overruling his objection to the state's rebuttal closing argument. "We review a trial court's decision to overrule an objection to closing arguments for abuse of discretion." *State v. Roberts*, 340 Or App 220, 223, 570 P3d 279 (2025). "Although control of counsels' arguments is within the discretion of the trial court, that discretion is not unbounded." *State v. Logston*, 279 Or App 296, 303, 347 P3d 352 (2015) (internal quotation marks omitted). "[W]e must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." *Roberts*, 340 Or App at 223 (internal quotation marks omitted). In conducting our review, "we view statements made by a party during argument in context, not in a vacuum." *State v. Mayo*, 303 Or App 525, 530, 465 P3d 267 (2020) (internal quotation marks omitted).

---

[3] We observe that the trial in this case took place in 2021 when *State v. Barnes*, 329 Or 327, 986 P2d 1160 (1999), *overruled in part by State v. Owen*, 369 Or 288, 505 P3d 953 (2022), was controlling precedent with regard to the elements of second-degree assault and their culpable mental states. *Barnes* had held that, "in a prosecution for [knowing] assault in the second degree, the state needs to prove only that [the] defendant was aware of the assaultive nature of his conduct and that his conduct in fact caused the victim serious physical injury." *Id.* at 338. In doing so, the court had held that no culpable mental state applied to the resultant (serious) physical injury. *Owen* adhered to *Barnes* in its identification of the elements of second-degree assault, 369 Or at 302-03, but "overrule[d] that part of *Barnes* holding that no culpable mental state attaches to the result element of second-degree assault." *Id.* at 318.

We do not understand defendant to argue that the trial court erred in failing to instruct the jury that defendant had to act with at least criminal negligence with regard to JB's resulting physical injury, as *Owen* now requires. Nor do we understand defendant to argue that the court's instruction that "the person's intent to injure the intended victim is transferred to the victim who was actually injured" improperly conveyed that, if the jury found that defendant intended to harm an unidentified person, it could presume that defendant intended JB's resultant physical injury. We therefore express no opinion on those unpreserved and unbriefed issues.

In defendant's closing argument, counsel emphasized that the "whole case is about people meeting on the steps of the Justice Center here in Portland to express their right to free speech" and "the marketplace of ideas that is enshrined in the First Amendment to the United States Constitution," which "protects both language that you like and language that you don't like" and "ideas that you cherish, as well as ideas that offend you deeply." Defense counsel urged the jury to find that defendant acted in self-defense and defense of others. As to Count 5, defense counsel contended that, while defendant's goal was to exercise his rights to speak freely and peacefully assemble, the young Black man to JB's left had acted aggressively by "coming up behind [him] (clapping hands) and clapping," which justified defendant's use of force.

In rebuttal, the prosecutor argued:

"[PROSECUTOR:]   And we haven't spent a lot of time talking about it, but that young [B]lack man that was down there, he was down there on August 15th at the center of these protests about social justice. That young [B]lack man, according to the [d]efense, was too loud. He was too loud. He clapped too loud and said, 'Hey, what's up?' too loud. He's too loud. If that young [B]lack man were here today in the back of the courtroom, or if he's watching out there, I would tell him link arms with [JB], you yell—

"[DEFENSE COUNSEL:]   Objection.

"[PROSECUTOR:]   —you be as loud as you can.

"THE COURT:   Overruled.

"[PROSECUTOR:]   You scream until they hear you in the mountaintops. You let it ring to the valleys. You let it ring to every town in this state and you tell him, 'Mr. Alan Swinney, you are not welcome and your violence is not welcome in this community.' Saying that violence is not okay is not a reason to be shot in the face.

"And as much as Alan Swinney wants to hand out life lessons, today is your day to go through this outrageous self-defense claim, set it aside, look at that outrageous conduct he does, match it up to the law and tell him that, 'In this community that violence is not acceptable.'

"And you can tell him all of that with one word, repeated 12 times, that that man, Alan Swinney, is guilty of each of the crimes the state has charged him with."

We begin with preservation. Here, defendant acknowledges that he did not specify the basis for his objection but contends that he nonetheless adequately preserved his assignment of error because the basis for his objection "would have been apparent to the trial court from context." *State v. Villar*, 287 Or App 656, 659, 404 P3d 1095 (2017). In defendant's view, it was apparent that he was objecting to the prosecutor's argument that the jury should "send a message" that defendant was unwelcome in the community, and that such argument is improper because it urged the jury to convict "to protect community values, preserve civil order, or deter future lawbreaking," which are "reasons wholly irrelevant to his own guilt or innocence." *State v. Chitwood*, 370 Or 305, 320, 518 P3d 903 (2022) (internal quotation marks omitted).

The state responds that defendant failed to preserve this assignment of error because a "general objection" is usually inadequate to preserve an issue for appellate review. *Villar*, 287 Or App at 658-59. In the state's view, the basis for defendant's objection was not apparent to the trial court because the prosecutor was responding directly to defendant's own argument about why he perceived the unidentified Black man to be an imminent threat, and the trial court could have understood defendant's objection to the prosecutor's final statement prior to the objection as irrelevant rather than improper. The state also points out that defendant's arguments on appeal focus almost exclusively on statements the prosecutor made *after* the trial court overruled his objection.

We agree with the state. Given the timing of defendant's objection, we conclude that, unlike in *Villar*, the record in this case indicates another "plausible basis for defendant's objection" such that we cannot conclude that the trial judge "must have known" that the ground of the objection was the same as defendant now asserts on appeal. 287 Or App at 658-59. Here, the court could have reasonably understood defendant to be objecting to the prosecutor's statement that

he would tell the young Black man to "yell" and "be as loud as [he] can" on the basis of relevance or inserting the prosecutor's personal views into the case. But the court would not necessarily, or even likely, have understood defendant to be objecting on the grounds that he now asserts on appeal because the prosecutor had not yet made any reference to sending *defendant* a message or convicting him on improper grounds at the time he objected. Even when "we consider the statements made just before and after defendant's objection in evaluating the trial court's ruling," *State v. Irish*, 340 Or App 341, 344 n 4, 571 P3d 195 (2025), we conclude that the basis of defendant's objection was not clearly apparent. To be sure, a defendant may preserve an objection to the entirety of a prosecutor's improper statement when the defendant interrupts the prosecutor and states the basis for the objection but does not renew the objection after the prosecutor "completes his thought." *Id.* (defendant's objection interrupted prosecutor's improper burden-shifting argument); *State v. Howard*, 337 Or App 675, 677, 564 P3d 494 (2025) (same). But this is not a case like *Irish* or *Howard* because here defendant's objection interrupted the prosecutor's "message" to the young Black man, not to defendant, and defendant did not state the basis for his objection. Accordingly, we conclude that defendant's claim of error is not preserved.

Alternatively, defendant asks that we review his assignment of error for plain error. The problem is that defendant assigned error only to the court overruling his objection and not to the prosecutor's individual statements. *See* ORAP 5.45(1) ("*No matter claimed as error will be considered on appeal unless the claim of error* was preserved in the lower court and *is assigned as error in the opening brief* in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error." (Emphases added.)). It is not clear to us how we could review the court overruling defendant's objection as plain error. Accordingly, we reject defendant's third assignment of error.

## PER DIEM FEES

In his fourth assignment of error, defendant contends that the trial court erred when it ordered him to pay per diem fees for the first time in the judgment, despite

announcing at sentencing that it would waive all fines, fees, and assessments. The state concedes the error and agrees that the proper remedy is remand for resentencing. *See State v. Broyles*, 296 Or App 358, 359, 438 P3d 476 (2019) (accepting the state's concession that the trial court erred by entering a judgment imposing a fine that was greater than that announced at sentencing hearing). We accept the state's concession and remand for resentencing.

## INDETERMINATE PPS TERM

In his fifth assignment of error, defendant contends that the trial court erred when it imposed 60 months of PPS minus time served on Count 8, because it is not an offense for which an indeterminate term of PPS may be imposed. The state concedes "that the trial court impermissibly created an indeterminate term of PPS" on Count 8. *State v. Mitchell*, 236 Or App 248, 250, 235 P3d 725 (2010). We accept the state's concession. *State v. Hall*, 256 Or App 518, 519, 301 P3d 438, *rev den*, 354 Or 148 (2013) ("The PPS term of defendant's sentence was indeterminate and, thus, constituted plain error, ORAP 5.45(1), in light of our decision in [*Mitchell*]."). On remand, the trial court may impose a determinate PPS term on Count 8.

Remanded for resentencing; otherwise affirmed.